UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY A. HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CV1813 RWS |
| | ) | |
| CITY OF ST. LOUIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff (registration no. #169814), an inmate at Correctional Center, for leave to commence this action without payment of the required filing fee [Doc. #2]. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $6.32. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward

these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $31.58, and an average monthly balance of $14.41. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $6.32, which is 20 percent of plaintiff's average monthly deposit.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. *Haines v. Kerner,* 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## The Complaint

Plaintiff brings this action alleging what he purports to be violations of his civil rights. Plaintiff first invokes the jurisdiction of 28 U.S.C. § 1343, asserting that he is entitled to seek redress for deprivations he allegedly suffered when certain jurors on his criminal jury were struck during voir dire. Unsurprisingly, plaintiff raises challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986).

Plaintiff next invokes the jurisdiction of the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*., and moves the Court to declare that pursuant to the Supreme Court case of *Powers v. Ohio*, 499 U.S. 400 (1991), he should be allowed to bring a Declaratory Judgment on behalf of an alternative juror who was excluded from the jury at his criminal trial, to assert race discrimination rights on her behalf, and thus, raise a collateral attack on his own conviction.

The relief sought by plaintiff is as follows: (1) a declaratory judgment stating that plaintiff has a liberty interest in Missouri Revised Statute § 494.400 *et seq*. (preemptory system) not to have "his jurors" struck pursuant to race; (2) a declaratory judgment that all citizens have a constitutional right to participate in their state-provided jury selection procedures without discrimination; (3) a declaratory judgment entitling plaintiff to relief pursuant to Missouri Revised Statute § 494.465.1 and *Powers v. Ohio*, 499 U.S. 400 (1991), *i.e.,* quashing or overruling plaintiff's criminal indictment; (4) declaring plaintiff's criminal conviction overruled and/or reversed or expunged; and (5) a mandatory injunction to George Lombardi, the Director of the Missouri Department of Corrections, requiring him to release plaintiff until he can be retried by a "jury free from racial discrimination."

## The Criminal Case and its Progeny

In order to discern the substance of plaintiff's allegations, it is necessary to review plaintiff's criminal case, as well as his direct appeals and his motions for post-conviction relief.

The night of October 8, 1988, Aquilla LaGrone, an officer with the St. Louis City Police Department was on patrol in O'Fallon Park when he saw a car in the park after curfew. LaGrone followed the car as it made a U-turn and traveled north. He saw three people inside the car, two in the back seat, one in the driver's seat. As the car was rolling down a hill, a woman jumped from the car. Before she jumped, LaGrone saw the passenger holding the woman by her right arm as she was getting out of the car. The woman, later identified as Karen Oliver, said she had been raped. Officer LaGrone testified that when Ms. Oliver got out of the car, her hair was a mess, her clothes were in disarray, her dress was hanging down in front, the zipper pull on her dress was broken, her dress was dirty, her neck was bruised, and she was not wearing shoes or stockings. She asked that the men return her property. One man, James Hill, took some jewelry and a purse from the car and gave them to the woman; when the other man, his brother, Gregory Hill was booked he had a necklace and bracelet on him that Ms. Oliver identified as belonging to her. The two brothers were arrested and indicted on two counts of forcible rape; two counts of forcible sodomy; second degree robbery; and felonious restraint. Gregory Hill, the plaintiff in this action, was also charged with being a prior and persistent offender.

The first day of trial, James Hill moved to sever his trial from that of his brother, citing the anticipated testimony of Officer LaGrone that, when he stopped the brothers' car, plaintiff said, "We were messing around in the park. She's my girlfriend." The motion was denied. Plaintiff then moved to waive his right to a jury trial. This motion was also denied.

At the conclusion of voir dire the prosecutor peremptorily struck nine of the fifteen black venirepersons and four of the twenty-one white venirepersons. The black stricken venirepersons included Madelyn Nash, Betty Booker, Kathleen Hubbard, Aminee Jones, Mattie

Keys, Darlene Johnson, Donn Rice, Caldonia Hackney, and Dewilla Jennings. The defense peremptorily struck three of the remaining six black venirepersons: Misses Johnson, Kirby and Thomas.

When called upon to explain his strikes of the nine black venirepersons, the prosecutor replied that he had struck Miss Nash because she knew the plaintiff's attorney; Miss Booker because her husband was on probation or parole for felony assault; Missess Hubbard and Jones because they wanted off the jury and had no prior service; Miss Keys because she was on a murder jury that did not reach a verdict and because she kept her eyes closed during examination; Miss Johnson because she was unemployed, had a brother in prison on a rape charge, characterized her brother's sentence as unfair on the grounds he did not do much, and had no prior jury service; Mr. Rice because he was unemployed; Miss Jennings because she served on a hung jury in a robbery case and was possibly related to someone that the prosecutor had prosecuted; and Miss Hackney because she did not have any prior jury service. Additionally, the prosecutor explained that he "struck virtually all women. I wanted men on this jury. That's my philosophy in trying a rape cause . . . I think I have a total of two strikes against men on the panel out of twelve. Ten were against women." When challenged as to why he did not peremptorily strike several white venirepersons who had no prior jury service, the prosecutor stated that those venirepersons were all male, and of the seven who were not stricken, one had a dad and brother who were police officers, one served as a reserve officer and was later stricken by the defense attorneys, one was robbed several times and was later stricken by the defense attorneys, and one was a victim of a burglary and was later stricken by the defense attorneys. The trial court found that the prosecutor's reasons were not pretextual and overruled the defense attorneys' *Batson v. Kentucky,* 476 U.S. 79 (1986), motion.

The jury returned a guilty verdict against both brothers on all of the charges. After plaintiff's motion for new trial was denied and he was sentenced, he appealed. While his direct appeal was pending, plaintiff moved for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. His motion was then amended by appointed counsel. An evidentiary hearing was conducted, and his motion was denied. The two appeals were then consolidated.

One of the grounds argued on appeal was that the trial court erred by denying plaintiff's *Batson* motion. With regard to plaintiff's *Batson* argument, the appellate court concluded that the trial court's finding that the prosecutor had offered race neutral reasons for his peremptory challenges was substantiated by the record. *See State v. Hill*, 808 S.W.2d 882, 889 (Mo.Ct.App. 1991); *see also, State v. Hill*, 817 S.W.2d 609, 610 (Mo.Ct. App. 1991). Plaintiff's other grounds for appeal, both on direct and on post-conviction relief, were similarly denied.

On December 26, 1996, petitioner sought habeas corpus relief in this Court. *See Hill v.Gammon*, 4:96CV2510 CEJ (E.D.Mo. 2000). Plaintiff brought six claims for relief, and again he sought relief under *Batson v. Kentucky*, 476 U.S. 79 (1986). This Court denied his request for relief on March 17, 2000, and the Eighth Circuit Court of Appeal denied plaintiff a certificate of appealability on May 19, 2000.

In the Memorandum and Order denying habeas relief, the District Court addressed plaintiff's *Batson* arguments on the merits:

> "The Equal Protection Clause forbids a prosecutor from using preemptory challenges to exclude otherwise qualified persons from the jury panel solely on account of their race." *Devose v. Norris*, 53 F.3d 201, 204 (8th Cir. 1995) (citing *Batson v. Kentucky*, 476 U.S. 79, 96 (1986)). In *Batson*, the Supreme Court outlined a three step process for evaluating a claim that the prosecutor has used peremptory challenges in a manner violative of the Equal Protection Clause. *Hernandez v. New York*, 500 U.S. 352, 358 (1991) (citing *Batson*, 476 U.S. at 96).

6

First the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race; second, if a requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking jurors in question; and finally, the trial court must determine whether the defendant has carried his burden of proving discrimination. *Id.* at 358-359 (citing *Batson*, 476 at 96-98). At the second step, "'the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation the reason offered will be deemed race neutral.'" *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam) (quoting *Hernandez*, 500 U.S. at 360) (*Purkett I*). Thus, prosecutors need only state a reason that is neutral or, in other words, not inherently discriminatory, regardless of whether it makes sense. *Elem v. Purkett*, 64 F.3d 1195, 1198 (8th Cir. 1995) (citing *Purkett I*, 514 U.S. at 768). Whether an explanation is neutral is a question of comparability. *Devose*, 53 F.3d at 204. "'It is well-established that peremptory challenges cannot be lawfully exercised against potential jurors of one race unless potential jurors of another race with comparable characteristics are also challenged.'" *Id.* (quoting *Doss v. Frontenac*, 14 F.3d 1313, 1316-1317 (8th Cir. 1994)). *See also, United States v. Jenkins*, 52 F.3d 743, 747 (8th Cir. 1995); *United States v. Scott*, 26 F.3d 1458, 1465 (8th Cir. 1994). The explanation "may be 'implausible or fantastic,' even 'silly or superstitious,' and yet still be 'legitimate,'" but "cannot be a mere denial of racial motive or mere affirmation of good faith." *Elem*, 64 F.3d at 1198. In cases such as petitioner's the preliminary issue of whether the defendant has made a prima facie showing becomes moot where the prosecutor defends his use of peremptory strikes. *See Hernandez*, 500 U.S. at 359. *See also Scott*, 26 F.3d at 1465 (district court required government to offer reasons for two peremptory strikes against African-Americans without expressly finding that defendant had made a prima facie showing); *United States v. Day*, 949 F.2d 973, 979 (8th Cir. 1991) (same).

. . . "A prosecutor's motive in excluding jurors presents a question of fact." *Shurn v. Delo*, 177 F.3d 662, 665 (8th Cir.), *cert. denied*, 120 S.Ct. 120 (1999). These findings of fact, which defeat petitioner's *Batson* argument, are supported by the record and are presumed to be correct. *Id.*; *Malone v. Vasquez*, 138 F.3d 711, 720 (8th Cir. 1998); *Gibson v. Bowersox*, 78 F.3d 372, 374 (8th Cir. 1996); *See also, Doss*, 14 F.3d at 1317 (strike was not violation of concept of "comparability" where Caucasian juror's exposure to same type of action that was at issue was vicarious, but African-American jurors' exposure was personal); *United States v. Ortiz-Martinez*, 1 F.3d 662, 673 (8th Cir. 1993) (no violation of "comparability" when Caucasian juror whose friend was prosecuted for crime was not removed but African-American juror whose sister was prosecuted was removed; Caucasian juror was not witness at trial, African-American juror was; Caucasian juror answered key question unequivocally, African-American juror did not); *United States v. Todd*, 963 F.3d 207, 211 (8th Cir. 1992) (prosecutor gave

7

> race-neutral explanation for peremptory strike of African-American venireperson who appeared inattentive, impatient, and hostile to prosecutor).

After his request for habeas relief was denied in the federal courts, plaintiff alleges that he filed a motion for post-conviction relief, in the City of St. Louis, in August of 2011, seeking to "vindicate the right of alternate juror Marilyn C. Caine" who was allegedly improperly stricken from his criminal trial because of her race. This was the first instance that plaintiff had raised any arguments relating to an "alternate juror" in either his direct or post-conviction appeals.

The Honorable Thomas Grady denied his motion, finding that the Court was not aware of any authority that authorized plaintiff to raise third-party rights in a collateral attack on his conviction. *See State v. Hill*, No. 881-03115A (22nd Judicial Circuit, August 26, 2011).

Plaintiff claims that on March 19, 2012, he filed with the Missouri Court of Appeals, a petition for writ of mandamus, No. ED98157, "attempting to direct the lower court to undo its error, in regards to Marilyn C. Caine Equal Protection right." Plaintiff asserts that on May 1, 2012, the appellate court denied his petition.

Plaintiff asserts that on September 4, 2012, he filed with the Missouri Supreme Court a writ of mandamus, No. SC92822, "attempting to seek to have the Higher Court direct the lower court undo its error in regards to Marilyn C. Caine Equal Protection right." Plaintiff states that attorney Jennifer Matthew entered her appearance on behalf of defendant the Honorable Thomas Grady in the action and stated that "Marilyn Caine's status as an alternate juror defeats relator's *Batson* challenge. To wit, Missouri courts explicitly reject the applicability of *Batson's* protections to alternate jurors". . .Specifically the exclusion of an alternate venireperson does not violate the constitutional rights of either the defendant or the excluded alternative venireperson."

Plaintiff states that on September 30, 2012, the Missouri Supreme Court summarily denied his petition for writ of mandamus.

## Discussion

Plaintiff's allegations in this action appear to be as follows: he is asserting a Fourteenth Amendment Equal Protection claim on behalf of an alternate juror from his criminal trial, Marilyn C. Cain. Plaintiff relies on the Supreme Court case of *Powers v. Ohio,* 499 U.S. 400 (1991), to support his position.

In *Powers v. Ohio*, the Supreme Court held that under *Batson*, the harm to be avoided is not merely the harm to a defendant by a trial by a jury from which members of one's own race have been eliminated, but also the harm to the community at large and to the excluded jurors by excluding persons from jury service "solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life." The *Batson* injury, then, is not to the individual right of the defendant, but to the individual right of the juror not to be excluded from jury service. Thus, in *Powers*, the defendant in the criminal case was held to have standing to raise the equal protection claim of the excluded jurors, because jurors would themselves confront "considerable practical barriers" to challenging their own exclusion. However, the Supreme Court said that the defendant need not share group membership with the challenged venireperson in order to share an interest in proceedings free from discrimination. Although *Powers* has been noted as an extension of the holding enumerated in *Batson v. Kentucky*, it cannot assist plaintiff in overturning his criminal conviction in this collateral civil proceeding.

The procedural mechanism whereby plaintiff has brought the instant case before this Court is through a civil declaratory judgment action. Before a federal court may issue a declaratory judgment, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, requires that

9

there be "a substantial controversy between parties having adverse legal interests." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985); *see also, Lake Carriers' Association v. MacMullan*, 406 U.S. 498, 506 (1972) (present continuing actual controversy requisite). In the present case, plaintiff has failed to show that an actual controversy exists. Plaintiff appears to be arguing that past judicial conduct – namely conduct by a state court judge and a state court prosecutor - has violated his constitutional rights. He does not argue that "such conduct has continued or will be repeated in the future." *Emory*, 756 F.2d at 1552. In effect, he is seeking to use the Declaratory Judgment Act to appeal his criminal conviction. This he may not do.

A state prisoner is not entitled to seek a declaratory judgment determination from the federal courts under 28 U.S.C. § 2201 as to the validity of the judgment under which he is confined. *See, e.g., Waldon v. State of Iowa*, 323 F.2d 852 (8th Cir. 1963); *Christopher v. State of Iowa*, 324 F.2d 180 (1963); *Shannon v. Sequeechi*, 365 F.2d 827, 829 (10th Cir. 1966) ("The [Declaratory Judgment] Act does not provide a means whereby previous judgments by state or federal courts may be reexamined, nor is it a substitute for appeal or post-conviction remedies."). If the restraint in which he is held is constitutionally invalid, the federal courts have the power to release him therefrom in habeas corpus, after exhaustion by him of such state remedies as are available to him. He cannot resort to a federal declaratory judgment suit in an effort to escape having to exhaust available state remedies and to circumvent the intent manifested by Congress in 28 U.S.C. § 2254 that the state courts are to be given "the opportunity to pass upon and correct errors of federal law in the state prisoner's conviction." *Fay v. Noia*, 372 U.S. 391, 438 (1963).

Any declaratory decree that the judgment here involved was invalid, because plaintiff had improperly been deprived of a right to a fair trial, would be in fact a review of the judgment and in effect a revision of it, since its adjudicatory reach is against the judgment itself. Such review

is limited to the habeas sections of Title 28 of the United States Code, which plaintiff has already pursued. *See, e.g., Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) ("The disruptive effects of [a declaratory] action...are peculiarly great when the underlying claim must be adjudicated in a federal habeas proceeding.")

Moreover, because plaintiff has already pursued his remedies in habeas corpus, pursuant to 28 U.S.C. § 2254, substantial difficulties exist for him to pursue his claims in any "second or successive" habeas petitions. *See* 28 U.S.C. § 2244(b)(1) (requiring dismissal of all claims presented in a prior habeas petition), § 2244(b)(2) (allowing presentation of new claims only under limited circumstances), § 2244(b)(3) (requiring petitioner to obtain permission from the appropriate Court of Appeals before filing a second or successive habeas petition). Because of these restrictions, the Court will not attempt to recharacterize petitioner's assertions in this matter. Instead, the instant action will simply be dismissed as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $6.32 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint because the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.   *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED AS MOOT**.

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 15th day of January, 2015.

/s/ Rodney W. Sippel
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE